IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHERRY PACE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 15-0157-WS-B |
| | ) |
| NICK WILLIAMS, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This matter comes before the Court on defendant Probate Judge Nick Williams' Motion to Dismiss (doc. 7) and his Motion to Disqualify Plaintiff's Counsel (doc. 14). Both Motions have been briefed and are now ripe for disposition.[1]

**I.     Relevant Background.**

On March 24, 2015, plaintiff, Sherry Pace (proceeding by and through counsel), filed her Complaint (doc. 1) in this District Court against Nick Williams (Probate Judge of Washington County, Alabama), Michael Goldman (the "Mental Health Representative" of Washington County, Alabama), Johnny Pace (plaintiff's ex-husband), and Jason Pace (plaintiff's ex-husband's son). The crux of the Complaint is Ms. Pace's contention that "one or more of the Defendants act[ed] wrongfully to involuntary commit her" without complying with proper procedures, without investigating the matter, without a factual basis, and with an improper

---

[1] For purposes of its Rule 12(b)(6) analysis, the Court accepts as true all well-pleaded factual allegations of the Complaint, and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of the complaint"). Of course, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

purpose (namely, her ex-husband's desire "to gain an unfair tactical advantage in an ongoing domestic relations dispute").  (Doc. 1, at 1.)²

With regard to defendant Nick Williams, the Complaint identifies him as Probate Judge of Washington County, Alabama, and sharply criticizes his handling of a petition for involuntary commitment filed by defendant Johnny Pace on or about August 29, 2014.  According to the Complaint, Judge Williams "wrongfully involuntarily committed [plaintiff] to a mental health facility summarily without any due process hearing or any investigation and without any attempt to comply with the statutory mandate for such issues."  (Doc. 1, ¶ 10.)  The Complaint further alleges that Judge Williams "could have easily … discovered" that "there was no actual need to commit the Plaintiff who did not then and does not now suffer from any mental health condition," had he "conducted any investigation or a pre-commitments due process hearing as is set out by state law."  (*Id.*, ¶ 16.)  Plaintiff's pleading repeatedly characterizes this alleged conduct as an "abuse of governmental power."

In sum, Ms. Pace seeks to hold Judge Williams liable for compensatory, consequential and punitive damages exceeding $1 million because he ordered her to be involuntary committed, allegedly without conducting a due process hearing, performing an investigation, or otherwise complying with Alabama law and procedure.  According to the Complaint, Judge Williams' conduct amounts to "violation of 42 U.S.C. Section 1983, abuse of governmental power, trespass and the wrongful taking of the Plaintiff's person" (doc. 1, ¶ 15); as well as "violation(s) of federal, state and municipal rights of private citizens to be free from unlawful and unauthorized governmental interference and 'taking' of private property for tactical advantage in a divorce and taking of the Plaintiff's person without due process of law" (*id.*, ¶ 19); and "retaliation against the Plaintiff SHERRY PACE's exercise of her First Amendment rights and vocal criticism of the Defendant(s) in the recent past" (*id.*, ¶ 22); and at least 15 separately enumerated state-law torts (*id.*, ¶ 25).

---

² As framed, the Complaint is a textbook example of an impermissible shotgun pleading, asserting each of at least three federal claims and at least 15 state-law tort claims against each of four defendants in an undifferentiated mass, without identifying which facts go with which claims and which claims go against which defendants.  For purposes of the instant Order, the Court sets this pleading defect aside, to be revisited at an appropriate time.

Judge Williams' response to the Complaint has been two-fold.  First, he filed a Motion to Dismiss (doc. 70) pursuant to Rule 12(b)(6), Fed.R.Civ.P., citing the doctrine of judicial immunity.  Second, he filed a Motion to Disqualify Plaintiff's Counsel (doc. 14) based on a conflict of interest, in that Ms. Pace's counsel had previously represented defendant Johnny Pace in connection with the underlying facts at issue in this litigation.  Plaintiff has denied that judicial immunity applies and has further denied that counsel labors under any conflict.

## II.     Analysis of Motion to Dismiss.

Judge Williams' Rule 12(b)(6) Motion hinges on the doctrine of judicial immunity.  It is hornbook law that "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (citation and internal quotation marks omitted); *see also Dykes v. Hosemann*, 776 F.2d 942, 944 (11th Cir. 1985) ("Since the seventeenth century, common law has immunized judges from suit for judicial acts within the jurisdiction of the court.").  "The rationale is that judges should not have to fear that unsatisfied litigants will hound them with litigation." *Weinstein v. City of North Bay Village*, 977 F. Supp.2d 1271, 1281-82 (S.D. Fla. 2013) (citation and internal marks omitted).[3]

In applying the two-pronged test for judicial immunity, "the first question is whether the judge dealt with the plaintiff in his judicial capacity." *William B. Cashion Nevada Spendthrift Trust v. Vance*, 552 Fed.Appx. 884, 886 (11th Cir. Jan. 13, 2014).  "If he did act in his judicial capacity, then we ask whether the judge acted in the clear absence of all jurisdiction." *Id.*  If the judge acted in his judicial capacity, and if he did not act in the clear absence of all jurisdiction, then he is entitled to judicial immunity, as a matter of law.  *See Washington Mut. Bank v. Bush*, 220 Fed.Appx. 974, 975 (11th Cir. Mar. 23, 2007) ("Judicial immunity applies when (1) the judge

---

[3]     As Justice White observed some 35 years ago, "Judicial immunity arose because it was in the public interest to have judges who were at liberty to exercise their independent judgment about the merits of a case without fear of being mulcted for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption." *Dennis v. Sparks*, 449 U.S. 24, 31, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *see also Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (a judge's "errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption.  Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation.").

dealt with the plaintiff in his judicial capacity and (2) the judge did not act in the clear absence of all jurisdiction.") (citation and internal marks omitted).

Beginning with step one, the allegations of the Complaint leave no doubt that Judge Williams dealt with Sherry Pace in his capacity as Probate Judge of Washington County. "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley*, 437 F.3d at 1070. Well-pleaded factual allegations of the Complaint reflect that Judge Williams' alleged wrongful act was his entry of an order of involuntary commitment and accompanying writ on August 29, 2014, directing that Sherry Pace be taken into custody and delivered to Eastpointe Hospital for mental health treatment. The Complaint confirms that Judge Williams took such measures only after Johnny Pace filed a Petition for Involuntary Commitment. Review and disposition of petitions for involuntary commitment is a normal judicial function of an Alabama probate judge.[4] Because it is an Alabama probate judge's job to review and decide petitions for involuntary commitment, the complained-of conduct by Judge Williams is the embodiment of a "normal judicial function." Plaintiff does not suggest otherwise. Under any reasonable application of the concept, Judge Williams was acting in his judicial capacity.

The first prong of the judicial immunity test having thus been satisfied, the analysis proceeds to step two, which provides that judicial immunity bars Ms. Pace's claims unless Judge Williams acted in the clear absence of all jurisdiction. This is a high bar. Indeed, "[j]udges do not lose their judicial immunity even if they act in absence of jurisdiction as long as they do not have knowledge that they lack jurisdiction or act in the face of clearly valid statutes or case law expressly depriving them of jurisdiction." *Franklin v. Arbor Station, LLC*, 549 Fed.Appx. 831,

---

[4] *See, e.g.,* Ala. Code § 22-52-2(a) ("[w]hen any petition is filed seeking the involuntary commitment of a respondent, the probate judge shall immediately review the petition"); Ala. Code § 22-52-10.1 (delineating circumstances under which probate judge may enter an order for involuntary commitment); Ala. Code § 12-13-40(3) (specifying that probate judges "shall have authority … [t]o appoint guardians ad litem for minors and persons of unsound mind, when necessary").

834 (11th Cir. Sept. 27, 2013) (citation and internal marks omitted).  Neither in her Complaint nor in her briefing has Ms. Pace identified facts showing that Judge Williams knew he lacked jurisdiction, much less that any Alabama statute or case law clearly deprived him of jurisdiction to rule on Johnny Pace's Petition for Involuntary Commitment filed against his wife in August 2014.  There being no facts or circumstances presented that might support an inference that Judge Williams acted in the clear absence of all jurisdiction, the Court concludes that the doctrine of judicial immunity applies.  Accordingly, Judge Williams is absolutely immune from all claims asserted against him in this lawsuit.

In so determining, the Court has considered and rejected plaintiff's counterarguments.  Principally, Ms. Pace asserts that judicial immunity does not apply because Judge Williams violated state law in his handling of the Petition for Involuntary Commitment.  This argument misapprehends the breadth and scope of judicial immunity.  A judge's judicial acts are not removed from the protections of judicial immunity merely because they are erroneous, unlawful, or even corrupt or malicious.  *See, e.g., Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) ("This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction.").[5]  So merely saying that Judge Williams contravened state or even constitutional law does not override his protections under the doctrine of absolute judicial immunity.  For judicial immunity purposes, it makes no difference whether Judge Williams "got it right," or even whether he followed the law.  Nor is plaintiff's case strengthened by her apparent allegation that Judge Williams persuaded Johnny Pace to file the Petition for Involuntary Commitment in the first place, particularly where (as here) there is no allegation that Judge Williams possessed any personal interest in the Paces' domestic dispute.  *See Harris v. Deveaux*, 780 F.2d 911, 916 (11th Cir. 1986) ("Judges must be free to act on their convictions.  Judge Deveaux may have acted improperly in ordering the charges against Harris.  We cannot

---

[5] *See also Stump v. Sparkman*, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."); *Conard v. Evans*, 193 Fed.Appx. 945, 948 (11th Cir. Aug. 22, 2006) ("a judge is immune from suit even when her exercise of authority is flawed by grave procedural errors") (citation and internal quotation marks omitted); *In re Lickman*, 304 B.R. 897, 902 (Bankr. M.D. Fla. 2004) (judicial immunity "applies however erroneous the act may have been, and however injurious in its consequences") (citation and internal quotation marks omitted).

say, however, that he was not acting in his judicial capacity.").[6]  Finally, plaintiff's reliance on Alabama cases interpreting and delineating the limitations of other forms of immunity (such as state-agent immunity) is unilluminating in the context of a judicial immunity analysis.

In short, the Court readily concludes that the doctrine of judicial immunity bars all of Sherry Pace's claims asserted against Judge Williams.[7]

### III.   Analysis of Motion to Disqualify.

Notwithstanding the dismissal of defendant Judge Williams, the Court now turns to his Motion to Disqualify Plaintiff's Counsel (doc. 14).  Ordinarily, such a motion would be rendered moot by the dismissal of all claims against the movant; however, given the seriousness of the allegations contained in that Motion and their obvious ramifications for plaintiff's counsel's ability to proceed against the remaining defendants, the Court will consider that motion on the merits.

---

[6]   Elsewhere, the *Harris* panel restated the point as follows:  "Judge Deveaux contends that Jones wanted to press charges, while Harris claims that only Judge Deveaux wished to do so.  This dispute, however, is irrelevant to our consideration of Judge Deveaux's claim of absolute immunity." *Id.* at 914.  The same is true here.

[7]   In addition to seeking dismissal of the claims against him on judicial immunity grounds, Judge Williams requests an award of attorney's fees.  In § 1983 suits such as that brought by Ms. Pace, "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).  This section "authorizes a district court to award attorney's fees to a defendant upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Fox v. Vice*, --- U.S. ----, 131 S.Ct. 2205, 2213, 180 L.Ed.2d 45 (2011) (citations and internal quotation marks omitted).  Defendant's entire argument for a fee award is "that the relevant law regarding Judge Williams's judicial immunity has been established since at least 1970." (Doc. 8, at 7.)  In its discretion, the Court declines to award attorney's fees here.  To be sure, plaintiff appears not to have considered the doctrine of judicial immunity; however, the Court cannot determine with any confidence that no colorable factual or legal arguments could have been asserted to oppose application of judicial immunity.  Stated differently, it appears that Ms. Pace could have raised non-frivolous (albeit not successful) counterarguments against application of judicial immunity in this case.  For example, as the *Harris v. Deveaux* line of authorities shows, where a judge actively becomes involved in the charging process (which is akin to what Ms. Pace says Judge Williams did in initiating the commitment proceeding), there may be cases where judicial immunity is called into question.  This is not one of those cases, but the Court cannot say (particularly given defendant's conclusory, afterthought treatment of the fee request) that it was frivolous for Ms. Pace to sue Judge Williams in these circumstances.

The basic problem identified in the Motion to Disqualify Counsel is that plaintiff's counsel has a conflict of interest in this case.  As noted, Ms. Pace is suing her ex-husband, Johnny Pace, on the theory that he "wrongfully ha[d] her involuntarily committed in order to gain a tactical advantage in an on-going Domestic Relations dispute." (Doc. 1, ¶ 4.)  The Complaint alleges that Johnny Pace "file[d] a false report" against Ms. Pace, then submitted "a vindictive Petition for Involuntary Commitment." (*Id.*, ¶¶ 8-9.)  Ms. Pace imputes a nefarious motive to Johnny Pace, alleging that he "had planned to file for divorce agents [*sic*] her from her [*sic*] while she was Involuntarily Committed." (*Id.*, ¶ 14.)

The rub is this:  Back on November 24, 2014, plaintiff's counsel sent a demand letter to Judge Williams, seeking compensation from him on the ground that he "wrongfully committed [Sherry Pace] to a mental health facility." (Doc. 14, Exh. A.)  The November 24 demand letter states that plaintiff's counsel had "spoken with both Mr. and Mrs. Pace, and each assert that this abuse of governmental power has caused them tremendous anxiety and stress." (*Id.*)  The letter proceeds with counsel's statement that "***[m]y clients*** have informed me that they are willing to settle this matter" for a particular sum, barring which "***the Pace family*** shall be forced to take further steps to protect ***their legal rights***." (*Id.* (emphasis added).)  Below the signature line is the legend "cc: Mr. and Mrs. John Pace." (*Id.*)  Attached to that letter was an Affidavit of Sherry Pace dated October 29, 2014 (and notarized on November 12, 2014), which by all appearances was prepared by (or at least with the assistance and legal advice of) plaintiff's counsel.  (*Id.*)  In this lawsuit, plaintiff has offered as an exhibit a companion affidavit signed by John Pace, also dated October 29, 2014 and notarized on November 12, 2014 by the same person as the Sherry Pace Affidavit. (Doc. 12, Exh. 6.)  Side-by-side inspection of the John Pace Affidavit and the Sherry Pace Affidavit makes plain that they were prepared at the same time by the same person(s).  All signs point to plaintiff's counsel.

The John Pace Affidavit delineates a version of the events leading to Sherry Pace's involuntary commitment which plaintiff (by and through the same attorney who represented both Mr. and Ms. Pace in November 2014) now claims is a lie.  Specifically, the John Pace Affidavit contains averments that Johnny Pace "felted [*sic*] forced by the Probate Judge Nick Williams into filing a Petition for Involuntary Commitment against my wife, even though I told him this was not what I wanted to do;" that Johnny Pace repeatedly said "that I just wanted to have a report or a record;" and that "at no time did I request this." (Doc. 12, Exh. 6, ¶¶ 6-7, 9.)  The

John Pace Affidavit concludes, "I believe both mine and my wife's civil rights have been violated." (*Id.*, ¶ 12.)  By contrast, Ms. Pace's Complaint alleges that Johnny Pace rigged the entire involuntary commitment petition in a "vindictive" attempt to get her involuntarily committed so that he could file for divorce and obtain a strategic advantage.  (Doc. 1.)

In the aggregate, then, the pertinent facts are these:  Plaintiff's counsel sent a demand letter to Judge Williams concerning the subject matter of this lawsuit back in November 2014, wherein she indicated that Ms. Pace and Johnny Pace were her clients.  At around the same time, plaintiff's counsel oversaw, assisted, or otherwise participated in preparation of affidavits by both Ms. Pace and Johnny Pace concerning the subject matter of this action.  Now, the very same attorney is representing Ms. Pace in a federal lawsuit against Johnny Pace predicated on the theory that everything in the Johnny Pace Affidavit is a lie.  If the case goes forward, plaintiff's counsel will no doubt examine Johnny Pace via deposition and/or trial testimony about the contents of an affidavit that (by all appearances) she helped him prepare, and that he signed at a time when she was holding herself out as his lawyer.  In short, plaintiff's counsel represented Johnny Pace in connection with a particular dispute last fall, yet she now represents his ex-wife in a lawsuit filed against him in connection with that very same dispute.

The resulting ethical dilemma is readily apparent.  Rule 1.9 of the Alabama Rules of Professional Conduct provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation; or (b) use information relating to the representation to the disadvantage of the former client." *Id.*  The present legal relationship implicates both aspects of Rule 1.9.  Unquestionably, counsel is representing Ms. Pace in a manner that is materially adverse to Johnny Pace's interests, in the very same (or at least a substantially related) matter in which she previously represented him.  There has been no showing that Johnny Pace has consented to this arrangement after consultation.  Moreover, counsel could not possibly represent Ms. Pace in her suit against Johnny Pace without leveraging and utilizing confidential information that he provided in the course of their previous attorney-client relationship.  Using that confidential information would violate Rule 1.6's prohibition on revealing attorney-client privileged information.  But not using that confidential information would violate Rule 1.7(b)'s provision that "[a] lawyer shall not represent a client if the representation of that client may be

materially limited by the lawyer's responsibilities to another client or to a third person." *Id.* Thus, if plaintiff's counsel uses information that Johnny Pace provided during their prior attorney-client relationship, then she is violating the prohibitions against revealing privileged communications and using information relating to a previous representation to the disadvantage of the former client. If she does not use that information, however, then the resulting limitation on her representation of Ms. Pace would run afoul of Rule 1.7(b)'s prohibition against representing a client when that representation is materially constrained by obligations to someone else. This is an ethical minefield through which there can be no safe passage.

Faced with these allegations in the Motion to Disqualify, counsel's response is to deny having ever represented Johnny Pace. According to plaintiff's counsel, Johnny Pace was simply "a witness to verify that [Ms. Pace] had been mistreated by" Judge Williams. (Doc. 15, ¶ 3.) She insists that Johnny Pace has never "asked her to represent him verbally or by written letter of contract." (*Id.*) The November 12, 2014 demand letter is unequivocal. It references anxiety and stress that Judge Williams' conduct has caused "both Mr. and Mrs. Pace." It professes to make a specific monetary demand on behalf of "[m]y clients." It states that, in the absence of amicable resolution, "the Pace family shall be forced to take further steps to protect their legal rights." And it reflects that courtesy copies were sent to "Mr. & Mrs. John Pace." There is no rational way to read the November 12 demand letter except as one made on behalf of both Sherry Pace and Johnny Pace. Plaintiff's counsel held herself out as Johnny Pace's lawyer. She must live with the consequences of that representation today.[8]

The remaining question is what is to be done. It is well settled that "a District Court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it." *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976); *see also Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1245 (11th Cir. 2009) (recognizing that "court has power to supervise professional conduct of lawyers who practice before it") (citation omitted). The Court therefore will not pretend that the conflict does not exist merely because

---

[8] Furthermore, it is inconceivable that counsel could have supervised / assisted / participated in preparation of the Johnny Pace Affidavit notarized on November 12, 2014 (the same day as the demand letter) without giving him legal advice. In that event, whether he had signed a formal retainer agreement or not, Johnny Pace received legal advice from plaintiff's counsel about the very matter in which she is now suing him on behalf of his ex-wife.

Johnny Pace has not raised the issue himself. Instead, the Court will allow plaintiff's counsel to select from three options, any one of which appear adequate to cure the ethical violation. Option One is that plaintiff's counsel and her law firm (under the imputed disqualification principles found at Rule 1.10) withdraw from representing Ms. Pace in this matter. In that event, the Court would afford Ms. Pace a window of time to retain substitute counsel, or to elect to proceed *pro se*. Option Two is that counsel obtain knowing, voluntary, valid consent from both Ms. Pace and Johnny Pace to proceed with this representation in its present form. Such consent would not be sufficient unless it specifically encompassed all of the sub-issues identified *supra*, and plaintiff's counsel would need to file appropriate, sufficient proof of such consent for both persons. Option Three is that plaintiff keeps counsel as her lawyer, dismisses all claims against Johnny Pace without prejudice, and proceeds only against the remaining defendants, Michael Goldman and Jason Pace (as to whom there is, at present, no indication of any conflict). Plaintiff's counsel must notify the Court in writing within two weeks of which option she intends to pursue.

### IV.  Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Defendant Probate Judge Nick Williams' Motion to Dismiss (doc. 7) is **granted** pursuant to the doctrine of judicial immunity. Plaintiff's claims against Judge Williams are **dismissed with prejudice**, and the Clerk of Court is directed to **terminate** him as a party defendant;

2. Judge Williams' request for attorney's fees embedded in his Motion to Dismiss is **denied** in the Court's discretion for lack of the requisite showing by movant; and

3. Defendant Probate Judge Nick Williams' Motion to Disqualify Plaintiff's Counsel (doc. 14) is **granted in part**. To remedy the ethical quandary identified in the Motion, plaintiff's counsel must notify the Court in writing, on or before **June 30, 2015**, as to which of the three options delineated above she intends to pursue. Upon receiving such notice, the Court will enter an appropriate follow-up order.

DONE and ORDERED this 16th day of June, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE